## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MARITZA PREBAL

    Plaintiff

Case No. 14cv61438-Cohn/Seltzer

-v-

SETERUS, FEDERAL NATIONAL
MORTGAGE ASSOCIATION, JP
MORGAN CHASE BANK, NA and
SHAPIRO, FISHMAN & GACHE', LLP,

    Defendants.

_____/

## COMPLAINT FOR DAMAGES
## JURY TRIAL DEMANDED

COMES NOW, the Plaintiff, MARITZA PREBAL, and sues SETERUS, FEDERAL NATIONAL MORTGAGE ASSOCIATION, JP MORGAN CHASE BANK, NA and SHAPIRO, FISHMAN & GACHE', LLP, and states as follows:

### JURISDICTION AND VENUE

1.    This is a suit pursuant to 28 U.S.C. 1331 federal question, an action for statutory and actual damages brought for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692, *et seq*.; for statutory and actual damages for violations of the Florida Consumer Collection Practices Act (FCCPA) FLA STAT §559 (Part VI) for statutory and actual damages brought for violations of the Real Estate Settlement Practices Act (RESPA) 12 U.S.C. §2605 et seq.; for statutory and actual damages for violations of the Truth in Lending Act (TILA)15 U.S.C. §1641 et seq.; and for Breach of

Contract and Tortious Interference.  These laws prevent, respectively, debt collectors and persons from, *inter alia*, engaging in abusive, deceptive, and unfair collection practices.

2.      The jurisdiction of this Court is conferred by 12 U.S.C. §2614; 15 U.S.C. §1692; and 28 U.S.C.§1331.

**3.      This is an action for damages which exceed $275,243.00.**

**PARTIES**

4.      Plaintiff, MARITZA PREBAL ("Plaintiff"), is a natural person, and citizen of the State of Florida, residing in Broward County, Florida.

5.      Defendant, SETERUS, is a "debt collector" as said term is defined under the FDCPA, 15 U.S.C. §1692a(6) doing business in Florida that regularly collects on notes, doing business in Florida.  SETERUS has asked that service of process be sent to their registered agent, C T CORPORATION SYSTEM, 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324.

6.      Defendant, JP MORGAN CHASE BANK, NA, is a "servicer" as said term is defined under pursuant to RESPA, an original creditor as defined by the FCCPA and a debt collector as defined by the FDCPA 15 U.S.C. §1692a(6) doing business in Florida that regularly collects on notes, doing business in Florida.  JP MORGAN CHASE BANK, NA has asked that service of process be sent to their registered agent, 270 Park Avenue New York NY 10017.

7.      Defendant, SHAPIRO, FISHMAN & GACHE', LLP, P.A. is a "debt collector" as said term is defined under the FDCPA, 15 U.S.C. §1692a(6) and a Florida Law Office that regularly collects on notes, doing business in Florida.

8.     SHAPIRO, FISHMAN & GACHE', LLP, P.A., ("SHAPIRO-LAW") is a corporation, authorized to do business in Florida and is located at 2424 NORTH FEDERAL HIGHWAY, STE 360, BOCA RATON, FLORIDA 33431.

9.     Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FNMA"), is a "debt collector" as said term is defined under the FDCPA, 15 U.S.C. §1692a(6) and a Florida Law Office that regularly collects on notes, doing business in Florida.

10.     FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FNMA") is a corporation, authorized to do business in Florida and is located at 4767 New Broad Street Orlando, FL 32814.

11.     Defendants regularly use the United States Postal Service in the collection of consumer debt.

12.     Defendant regularly collects or attempts to collect debts for other parties. Defendant is a "debt collector" as that term is defined in the FDCPA.

13.     At all times material to the allegation of this Complaint, Defendant was acting as a debt collector with respect to the collection of Plaintiff's alleged debt.

14.     Plaintiff contends that Defendants have conspired and committed fraud in order to wrongfully foreclose with total disregard for Federal and State laws.

15.     Plaintiff contends that Defendants have created and caused fraudulent documents to be filed into the public records the State Court giving the appearance that there is a legal foreclosure going while some or all of the Defendants continue to break the law.

16.     Plaintiff contends that this is common practice by some or all Defendants nationwide and that some or all Defendants are under investigation by the U.S. Department of Justice and the Attorneys General of both the United States and Florida.

17.    Defendants acting within the scope of their employment are vicariously liable for the actions of their respective employers. *Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507 (9th Cir. 1994)*.

18.    With respect to the "Congressional findings and declaration of purpose" portion of the FDCPA, The United States Congress has declared at 15 U.S.C. § 1692:

> *(a) Abusive practices*
>
> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
>
> *(b) Inadequacy of laws*
>
> Existing laws and procedures for addressing these injuries are inadequate to protect consumers.

## INVESTIGATION BY THE DEPARTMENT OF JUSTICE

19.    With respect to the Federal Government, at least one of the Defendants has consented to the 49 State Attorney General $25 Billion Dollar Settlement (herein AG settlement). Due to investigation by the Department of Justice (DOJ) February 9, 2012, the DOJ found numerous acts of unfair practices by the nations largest banks in state court foreclosures.

20.    This is the largest federal-state civil settlement ever obtained and is the result of extensive investigations by federal agencies, including the Department of Justice, HUD and the HUD Office of the Inspector General (HUD-OIG), and state attorneys general and state banking regulators across the country. The joint federal-state group entered into the agreement with the nation's five largest mortgage servicers: Bank of America

Corporation, JPMorgan Chase & Co., Wells Fargo & Company, Citigroup Inc. and Ally Financial Inc. (formerly GMAC). These banks consented to judgment of $25 billion.

21.     The settlement is primarily created to commit $25 billion to resolve violations of state and federal laws by said banks. "These violations include servicers' use of "robo-signed" affidavits in foreclosure proceedings; deceptive practices in the offering of loan modifications; failures to offer non-foreclosure alternatives before foreclosing on borrowers with federally insured mortgages; and filing improper documentation in federal bankruptcy court."

22.     <u>The new servicing standards make foreclosure a last resort by requiring servicers to evaluate homeowners for other loss mitigation options first.  In addition, banks will be restricted from foreclosing while the homeowner is being considered for a loan modification.</u>  The new standards also include procedures and timelines for reviewing loan modification applications and give homeowners the right to appeal denials. Servicers will also be required to create a single point of contact for borrowers seeking information about their loans and maintain adequate staff to handle calls.

23.     Investigations were conducted by the U.S. Trustee Program of the Department of Justice, HUD-OIG, HUD's FHA, state attorneys general offices and state banking regulators from throughout the country, the U.S. Attorney's Office for the Eastern District of New York, the U.S. Attorney's Office for the District of Colorado, the Justice Department's Civil Division, the U.S. Attorney's Office for the Western District of North Carolina, the U.S. Attorney's Office for the District of South Carolina, the U.S. Attorney's Office for the Southern District of New York, SIGTARP and FHFA-OIG. The Department of Treasury, the Federal Trade Commission, the Consumer Financial

Protection Bureau, the Justice Department's Civil Rights Division, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Department of Veterans Affairs and the U.S. Department of Agriculture made critical contributions.

> **Department of Justice**
> Office of Public Affairs
> FOR IMMEDIATE RELEASE
> Thursday, February 9, 2012
> Federal Government and State Attorneys General Reach $25 Billion Agreement with Five Largest Mortgage Servicers to Address Mortgage Loan Servicing and Foreclosure Abuses
> $25 Billion Agreement Provides Homeowner Relief & New Protections, Stops Abuses

## FACTUAL ALLEGATIONS

24.     Defendants sought to collect a debt from Plaintiff arising from an alleged debt incurred by Plaintiff for personal, family, or household purposes; more specifically, the debt at issue was allegedly incurred on a note and secured by a mortgage.  The latter is null and void and secures the former (Exhibit "A" Note Exhibit "B" mortgage).

25.     Plaintiff issued note and mortgage in a party other than Defendant SETERUS or FNMA.

26.     The Plaintiff has no contract with SETERUS or FNMA.

27.     The Plaintiff has no legal obligation to pay SETERUS or SHAPIRO-LAW.

28.     Sometime thereafter and without notice to the Plaintiff, the Plaintiff's note and mortgage was sold one or more times without prior notice to the Plaintiff's as required under paragraph 15, 20 and 22 of the mortgage.

29.    Sometime thereafter and without proper notice to the Plaintiff, the Defendant JP MORGAN CHASE BANK, NA, SETERUS and SHAPIRO-LAW engaged in collection activity against the Plaintiff.

30.    Thereafter, JP MORGAN CHASE BANK, NA claimed that the note and mortgage are owed to them and filed for foreclosure; however the Plaintiff has not contract with Defendant SETERUS.

31.    The basis of their foreclosure was an assignment of mortgage signed by BRIAN BLY.

32.    Defendants caused the filing on the public record of an assignment of mortgage of the Plaintiff's property that stated that the mortgage was assigned by "VICE-PRESIDENT" BRIAN BLY.  Brian Bly is actually NOT a VICE PRESIDENT of any company and in fact works for NATIONAL TITLE CLEARING, a company in the center of the robo-signing scandal.

33.    **BRIAN BLY has been deposed and admitted, under oath, that he has no authority to assign said mortgages and has no actual knowledge of any sale of notes or mortgages, even though he swore under penalties of perjury that he had first hand knowledge of the sale and assignment of said mortgage.**

34.    Because of said willful actions by JP MORGAN CHASE BANK, NA, SETERUS, FNMA and SHAPIRO-LAW the Plaintiff have been made to suffer years of grief and anguish of the illagel acts of the Defendants.

35.    The property is the Plaintiff's only home and where the Plaintiff resides with Plaintiff's family.

36.    Defendant in the complaint claimed that:

"All conditions precedent to the acceleration of this Mortgage Note and to foreclosure of the Mortgage have been fulfilled or have occurred."

This statement was false, misleading, and deceptive to the "least sophisticated consumer".

37.     Said foreclosure action was sent to the Plaintiff in an attempt to collect a debt.

38.     The FDCPA has been construed by Federal Courts as a strict liability statute that is to be construed liberally so as to effectuate its remedial purpose, to extinguish, among other things abusive, oppressive, deceptive, unfair and unconscionable collection practices in the collection of a debt. *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir. 1996).

39.     The Plaintiff did not receive foreclosure counseling as required under the National Housing Act (NHA), 12 U.S.C. 1701x (c)(5) which requires all private lenders servicing non-federally insured home loans to advise consumers, including the Plaintiff, of any home ownership counseling required, together with information about counseling offered by the U.S. Department Of Housing And Urban Development.

40.     Section 12 U.S.C. 1701x(c)(5) imposes a specific statutory obligation on all creditors across the United States who service conventional loans, (non federally-insured home loans) that requires the creditor to send a specific notice about access and availability of homeownership counseling to defaulting homeowners within 45 days of a home loan payment default.  The creditor is obliged to advise the homeowner of any homeownership counseling offered by the servicer of the loan and/or information about how to access HUD homeownership counseling.

41.     At no point in time were the Plaintiffs offered foreclosure counseling.   An unsophisticated consumer would be frustrated and would believe that this practice would be unfair.

42.     The obligation sued upon by Defendant JP MORGAN CHASE BANK, NA and FNMA does not contain or allow for the acceleration of the debt, allegedly due, unless Defendant has fulfilled the condition precedent of notice under paragraph 22 of the Mortgage *prior to filing suit*.  By failing to give the requisite notification before filing suit, Defendant has no right to accelerate.  An unsophisticated consumer would believe that this act would be deceptive and unfair.

43.     Therefore, JP MORGAN CHASE BANK, NA was not the legal owner of the note upon filing of said foreclosure complaint.

44.     The chain of assignments and/or endorsements of the Note are broken and neither the Defendant JP MORGAN CHASE BANK, NA, SETERUS and FNMA nor the unnamed entity upon whose behalf they are acting, can show a chain of title which is required to have standing.

45.     Defendant, SHAPIRO, FISHMAN & GACHE', LLP, P.A., has an established pattern and practice of engaging in illegal debt collection practices and in fact engage and use false representation to collect, or attempt to collect, a debt.  The Defendant SHAPIRO, FISHMAN & GACHE', LLP, P.A., knew or should have known that their acts and the acts of their client were unlawful and contrary to the spirit of the fairness.

46.     Upon close review of case documentation submitted by Defendant SETERUS numerous errors in their lawsuit are elevated due to an obvious lack of consistency.  Those errors, made jointly and individually on the part of Defendant's legal counsel, SHAPIRO, FISHMAN & GACHE', LLP, P.A., were fatal to their debt collection efforts and harmed the Plaintiff.

47.     In accordance with Fla. Stat. 559.715 (2009), an assignee of a Mortgage and Note must give the debtor written notice of such assignment within thirty (30) days after the assignment. Plaintiffs have never received such a notice.

48.     Again, the Defendants violated federal and state law by failing to send the Plaintiff a hello letter, a good-by letter, failing to observe notification requirements under paragraph 15, 20 and 22 of the mortgage, and failing to send the Plaintiff an assignment within 30 days of the sale of the note or mortgage.

49.     A Servicing Transfer Statement is required if the loan servicer sells or assigns the servicing rights to a borrower's loan to another loan servicer.  The loan servicer must notify the borrower 15 days before the effective date of the loan transfer pursuant to 24 C.F.R. § 3500.21 (d).  The Defendants failed to provide such notices one or more times.

50.     All Defendants conspired and acted in continuing collection activities without lawful authority to do so.

51.     The court should notice that at all times material hereto, some, or all, the Defendants have acted in violation of cease and desist orders issued by governmental regulatory agencies including, but not limited to, the Offices Of the Comptroller of the Currency (O.C.C.), Offices Of the Thrift and/or the Securities and Exchange Commission (SEC).

52.     Plaintiff alleges that the Defendants engaged in unlawful collection practices and have established common patterns and practices as more fully described hereto in attempting to collect a consumer related debt.

53.     The Florida Consumer Collection Practices Act (FCCPA, F.S. 559.552) prohibits Defendant JP MORGAN CHASE BANK, NA, FNMA or SETERUS from collecting the

underlying consumer mortgage debt involved in this action by asserting its right to foreclose when they know that such a right does not exist because of non-compliance with the federal default servicing obligations, and guidelines prior to filing their foreclosure action.

54.    Defendant JP MORGAN CHASE BANK, NA, FNMA, SETERUS and SHAPIRO, FISHMAN & GACHE', LLP, P.A.   failed to properly supervise his employees, agents and debt collectors.

55.    JP MORGAN CHASE BANK, NA, SETERUS and FNMA have **overseen the violations of FDCPA** and chose to ignore responsibilities in rectifying these problems.

56.    SHAPIRO, FISHMAN & GACHE', LLP, P.A. have **overseen the violations of FDCPA** and chose to ignore responsibilities in rectifying these problems.

57.    Defendant JP MORGAN CHASE BANK, NA, SETERUS and FNMA continues to use the services of SHAPIRO, FISHMAN & GACHE', LLP, P.A., PA despite having knowledge of the Defendants' flagrant disregard for due process and collection laws.

58.    The Plaintiff has suffered for years of litigations and the unconscionable debt collection actions of the Defendants for several years.

59.    The Plaintiff sent the Defendant's a notice to cease collection activity (Exhibit "C"), a Notice to Validate Debt (Exhibit "D"), a Notice of Dispute (Exhibit "E") and a Qualified Written Request ("QWR" Exhibit "F") and the Defendant have refused to respond. A copy of each was sent to JP MORGAN CHASE BANK, NA, SETERUS, SHAPIRO, FISHMAN & GASHE, LLP and FEDERAL NATIONAL ASSOCIATION (Proof of service Exhibit "G").

60.     Despite the notices, the Defendants' did not cease collection acitivty.  Defendant SETEUS did not timely respond the Plaintiff's QWR and did not send all of the requested information as required under RESPA and TILA.

61.     The Defendants have conspired to deceive the Plaintiff.

62.     The Defendant's have failed to list the Plaintiff debt as disputed in his credit report.

63.     All conditions precedent to the bringing of this action have been performed, waived or excused.

64.     Rather than dismiss the State Court lawsuit for foreclosure and debt collection, Defendants continued to litigate the matter forcing Plaintiff and the Court to incur additional time and expense despite the obvious inconsistency in their actions and deceptive acts.

65.     The acts of the Defendants in their attempt to collect on this debt are nonsensical to the least educated consumer, sloppy, confusing, unconscionable and lack legal basis.

66.     The Defendants have deceived the Plaintiff and engaged in a pattern and practice of unfair and deceptive collection practices.

**COUNT I**
**VIOLATION OF FAIR DEBT COLLECTION**
**PRACTICES ACT (FDCPA), 15 U.S.C. §1692**

67.     Plaintiff's factual allegations are realleged as though fully set forth herein.

68.     Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692a(3).

69.     The Defendants are engaged in a collection of a "debt" as defined by § 1692a(5):

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household

purposes, whether or not such obligation has been reduced to judgment.

70.    The Defendants are in violation of FDCPA, 15 U.S.C. §1692a.  The Defendants engaged in "communication" in the collection of a "debt" as defined by § 1692a(5):

> The term "communication" means any obligation or alleged obligation of a consumer to pay money arising out of a judgment.

71.    Defendants JP MORGAN CHASE BANK, NA, FEDERAL NATIONAL MORTGAGE ASSOCIATION, SETERUS and SHAPIRO, FISHMAN & GACHE', LLP are debt collectors within the meaning of §559.55(6).

72.    Plaintiff seeks a declaration that Defendant's practices are in violation of the FCCPA and FDCPA;

73.    Plaintiff did violate the FCCPA and FDCPA.  Pursuant to Florida FCCPA, violations of the FDCPA are to be given great wait in considering violations of FCCPA to wit:

559.552(5)

> (5) In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.

> 559.78 Judicial enforcement.

> --In addition to other penalties provided in this part, state attorneys and their assistants are authorized to apply to the court of competent jurisdiction within their respective jurisdictions, upon the sworn affidavit of any person alleging a violation of any of the provisions of this part. Such court shall have jurisdiction, upon hearing and for cause shown, to grant a temporary or permanent injunction restraining any person from

> violating any provision of this part, whether or not there exists an adequate remedy at law;  and such injunction, suspension, or revocation shall issue without bond.

559.785 Criminal penalty.

> --It shall be a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083, for any person not exempt from registering as provided in this part to engage in collecting consumer debts in this state without first registering with the office, or to register or attempt to register by means of fraud, misrepresentation, or concealment.

74.    As a consequence of the acts of the defendants' Plaintiff are entitled to statutory and actual relief for the acts of the Defendants.

75.    The FCCPA permits for the recovery of damages for emotional distress and is not subject to the impact rule. *Florida Department of Corrections v. Abril*, 969 So. 2d 201 (Fla. 2007).

76.    Defendants JP MORGAN CHASE BANK, NA, FNMA, SETERUS and SHAPIRO, FISHMAN & GACHE', LLP, P.A.  are debt collectors within the meaning of the FDCPA, 15 U.S.C. §1692a(6).

77.    Defendants JP MORGAN CHASE BANK, NA, FNMA, SETERUS and SHAPIRO, FISHMAN & GACHE', LLP, P.A. violated the FDCPA. Defendants' violations include, but are not limited to, the following:

(a) Defendant SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person.
(b) Defendant SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA violated 15 U.S.C. §1692e(2) by falsely representing the character, amount, or legal status of any debt.
(c) Defendant COUNTRYWIDE SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA violated 15 U.S.C. §1692e(6) by sale or transfer of any interest in the debt will cause the consumer to lose any claim or defense to payment of the debt.
(d) Defendant SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA violated 15 U.S.C. §1692e(8) by communicating or threatening to

communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(e) Defendant SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA violated 15 U.S.C. §1692e(10) by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(f) Defendant SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA violated 15 U.S.C. §1692e(11) by the failure to disclose in the initial written communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector.

(g) Defendant SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA violated 15 U.S.C. §1692e(14) by the use of any name other than the true name of the debt collector's business.

(h) Defendant SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA violated 15 U.S.C. §1692f(1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(i) Defendant SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA violated 15 U.S.C. §1692f(6) taken or threatened to unlawfully repossess or disable the consumer's property.

(j) Defendant SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA violated 15 U.S.C. §1692g by, within five days after the initial communication with Plaintiff in connection with the collection of any debt, failing to send Plaintiff a written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

WHEREFORE, Plaintiff demands judgment for damages against SHAPIRO,

FISHMAN & GACHE', LLP, SETERUS and FNMA  for actual or statutory damages,

and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1692k.

WHEREFORE, Plaintiff MARITZA PREBAL requests that this Court enter judgment in her favor and against Defendants SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA for:

    a.  Statutory and actual damages pursuant 15 U.S.C. §1692k;

    b.  Attorney's fees, litigant expenses and costs of the instant suit; and

    c.  Such other or further relief as the Court deems proper.

## COUNT II
## VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA), FLA. STAT. §559(Part VI)

78.    Plaintiff alleges and incorporates the information in the factual allegations as though fully restated hereto.

79.    Plaintiff is a consumer within the meaning of §559.55(2).

80.    SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA are debt collectors within the meaning of §559.55(6).

81.    All Defendants violated §559.72(9) by claiming, attempting or threatening to enforce a debt when such persons knew that the debt was not legitimate.

82.    As a consequence of the acts of the defendants' Plaintiff are entitled to statutory and actual relief for the acts of the Defendants.

83.    The FCCPA permits for the recovery of damages for emotional distress and is not subject to the impact rule. *Florida Department of Corrections v. Abril*, 969 So. 2d 201 (Fla. 2007).

84.    All Defendants violated §559.72(9) by claiming, attempting or threatening to enforce a debt when such persons knew that the debt was not legitimate.

85.     As a consequence of the acts of the defendants' Plaintiff MARITZA PREBAL lost his home.

**WHEREFORE**, Plaintiff demands judgment for damages against SHAPIRO, FISHMAN & GACHE', LLP, SETERUS and FNMA  for actual and statutory damages, punitive damages, attorney's fees and costs, pursuant to Fla. Stat. §559.77. Plaintiff respectfully request that this Court award damages, and any other just and appropriate relief under the law, including but not limited to, attorneys' fees and costs.

## COUNT III
## VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA), 12 U.S.C. §2605

86.     All previous paragraphs are realleged as though fully set forth herein.

87.     Defendants SETERUS is a " servicer'' of a federally related mortgage loan within the meaning of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605.

88.     Plaintiffs' written requests for information about his account and correction of Defendants' errors were ''qualified written requests'' (QWR) within the meaning of RESPA. Defendants failed to acknowledge the receipt of said QWR within 5 days.

89.     SETERUS deliberately failed to respond in a proper and timely manner to Plaintiff's ''qualified written requests'' for information about, and corrections to, his mortgage account, in violation of 12 U.S.C. §2605(e).

90.     Defendant again failed to respond within thirty (30) as required by RESPA.

91.     Defendants SETERUS engaged in a pattern and practice of violating RESPA.

92.     The Plaintiff is otherwise entitled to recoupment of said amounts if the violations of TILA are time barred.

WHEREFORE, Plaintiff demands judgment against SETERUS and   for a proper accounting and application of his mortgage payments and for actual, statutory, treble and/or punitive damages, and attorney's fees and costs, along with any other and further relief as the court deems just and proper, pursuant to 12 U.S.C. §2605.

## COUNT IV
## VIOLATION OF TRUTH IN LENDING ACT (TILA), 15 U.S.C. §1641
## BY DEFENDANTS SETERUS AND UNKNOWN HOLDER IN DUE COURSE

93.     All Paragraphs are realleged as though fully set forth herein.

94.     A new creditor must provide notice of its status pursuant to 15 U.S.C. §1641(g):

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.


95.     At all times material hereto, Defendant has represented to the Plaintiff to be a "creditor" as the term is defined in 15 U.S.C. §1602(g).

96.    SETERUS stated that is the "holder" and not the "holder in due course" for the Plaintiff's note.

97.    Effective October 1, 2009 for all loans secured by borrower's principal dwelling are subject to:

**Dodd Frank Act Section 1464**
*SEC. 1464. TRUTH IN LENDING ACT AMENDMENTS.*

*(a) REQUIREMENTS FOR PROMPT CREDITING OF HOME LOAN PAYMENTS.— Chapter 2 of the Truth in Lending Act (15 U.S.C. 1631 et seq.) is amended by inserting after section 129E (as added by section 1472) the following new section:*

*''§ 129F. Requirements for prompt crediting of home loan payments*

**(b) REQUESTS FOR PAYOFF AMOUNTS.—Chapter 2 of the Truth in Lending Act (15 U.S.C. 1631 et seq.), as amended by this title, is amended by inserting after section 129F (as added by subsection (a)) the following new section:**

*''§ 129G. Requests for payoff amounts of home loan*

**''A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.''.**

"Prompt" response to payoff requests

Section 1464. Truth in Lending Act Amendments

(b) Requests for Payoff Amounts- Chapter 2 of the Truth in Lending Act (15 U.S.C. 1631 et seq.), as amended by this title, is amended by inserting after section 129F (as added by subsection (a)) the following new section:

Sec. 129G. Requests for payoff amounts of home loan

`A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.'.

98.   The Defendant SETERUS failed to comply with Section 1464 of the Truth in Lending Act Amendments Section 129F.

99.   The Defendant SETERUS failed to comply with Section 1464 of the Truth in Lending Act Amendments Section 129G.

100.   The Plaintiff intends to discover who is the holder in due course and the "creditor" of the subject note and mortgage through discovery.

101.   The Plaintiff relied on multiple representations made by the servicer and the servicer has yet to give the Plaintiff satisfactory information proving lawful authority to foreclose or negotiate with the Plaintiff.

102.   The Defendant servicer, by claiming to be the servicer, was bound under RESPA and TILA to provide accurate information and sound business practices.

103.   The Defendant servicer has represented to the Plaintiff on several occasions that the Defendant servicer has the legal authority to modify, foreclose, receive payments and negotiate on behalf of the holder of the note.

104.   The Plaintiff had a reasonable expectation that all of his answers regarding proof of lawful authority and his dispute under RESPA and TILA would be answered in a reasonable time in order to prove the servicer's representations.

105.   The Plaintiff has a reasonable expectation that the servicer would not act in bad faith and provide all documentation regarding the Plaintiff's loan within a reasonable time including proof of assignments, endorsements, a loan payoff, itemized billing and charges billed against the Plaintiff's account as stated in the Plaintiff's QWR request (See QWR).

106.    The Defendant servicer has deceived the Plaintiff and to Plaintiff's detriment, has omitted, altered, lost or misplaced vital information regarding the Plaintiff's loan.

107.    Plaintiff relied on the misleading or improper statements and misrepresentations of the Defendant servicer and as a result of this reliance suffered actual damage.

108.    The Defendant servicer through deception and omissions withheld vital information regarding the Plaintiff's loan.

109.    By doing so, the Plaintiff withheld the identity of the true owner of the Plaintiff's loan and the Plaintiff was at a disadvantage to negotiate better terms for a modification or short sale.

110.    Through deception and omissions by the Defendant servicer and nondisclosure of the assignment of the servicing of the loan the Defendant servicer engaged in a pattern and practice of nondisclosure that would deceive a consumer.

111.    The missing notices, assignments and endorsements prove that one or more unknown parties breached the mortgage contract, federal and state law regarding the sale, assignment and endorsement of Plaintiff's loan and the Defendant servicer willfully withheld this information from the Plaintiff.

112.    These actions by the Defendant caused actual damages to Plaintiff, including mental distress and damage to her credit reports. Plaintiff made repeated requests by telephone and correspondence, were forced to hire counsel, and still received inconsistent and irreconcilable no records from Defendant explaining why Defendant shows Plaintiff one month behind on the account.

113.    These actions by Defendant are part of a pattern and practice of noncompliance with the requirements of the RESPA statutes, compelling the award of additional damages against Defendant.

114.    Defendant negligently serviced the loan, in breach of its duty to Mr. Van Loon to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records in a non-negligent manner.

115.    These actions by Defendant justify an award of punitive damages and actual attorney fees and costs.

116.    The lack of accurate information regarding the Plaintiff's loan from the Defendant servicer made the Plaintiff, contused, frustrated, created additional stress and was detrimental to the Plaintiff modification and short sale prospects.

117.    Through acts of deception of omission and deception, the Defendant servicer concealed material information likely to yield key information that would have proven essential in the modification or short sale and the proper holders of the note contact.

118.    Time being of the essence, the Defendant servicer withheld this information to the detriment of the Plaintiff.

119.    The Plaintiff believed that there was insufficient information regarding his loan when the defendant servier knew the real identity of the loan and concealed the technical deficiencies of said documentation.  The Plaintiff could have brought those deficiencies to the attention of the state court tribunal as an issue of material fact in dispute to defeat or stay the court judgment.

120.    As an approximate result of the Defendant servicer's omissions, deceptive business practices and misrepresentations, the Plaintiff was a disadvantage to negotiate with the proper party within a reasonable time and was at an extreme disadvantage in  the state court litigation.

121.    At all times material hereto, Defendant SETERUS was and has represented to the Plaintiff to be a "creditor" as the term is defined in 15 U.S.C. §1602(g).

122.    At some point in time prior to the violations alleged herein, one or more unknown parties employed SETERUS to service the subject loan.

123.    At all times material hereto, SETERUS is and was a loan servicer as the term is defined in 12 U.S.C.A. § 2605(i)(2), that services the loan obligation owned by FANNIE MAE and secured by a mortgage upon Plaintiff's primary residence and principal dwelling.

124.    SETERUS was obligated to disclose the identity of the owner of the obligation, as well as its address and telephone number under 15 U.S.C. §1641(f)(2) of TILA, which state in part:

> *Under written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the sevicer, with the name, address and telephone number of the owner of the obligation or the master servicer of the obligation.*

15 U.S.C. §1641(f)(2).

125.    SETERUS did not properly respond to Plaintiff's written request and did not satisfy the requirements of 15 U.S.C. §1641(f)(2).

126.    SETERUS has failed to or refused to comply with 15 U.S.C. §1641(f)(2) of TILA by not providing the telephone number of the owner or master servicer  of the obligation.

127.   As its sevicer, SETERUS is/ was the employee and agent of the holder of the note.

128.   Upon information and belief, the unknown owner before the note and mortgage was assigned to SETERUS for Collection; the unknown Holder In Due Course had considerable control over SETERUS by virtue of a Servicing Agreement that governs their relationship.

129.   Upon information and belief, one of the very specific functions the Servicing Agreement was designed to cover was SETERUS's responding to requests under 15 U.S.C. 1641(f)(2).

130.   Upon information and belief, the owner of the note could have terminated SETERUS's employment at any Time.

131.   The owner of the note is responsible for SETERUS's failure to respond properly to Plaintiff's request since SETERUS was acting in furtherance and within the scope of its employment for the holder in due course.

132.   Plaintiff is entitled to the following damages for failure of TILA by the Holder in due course:  actual damages sustained by Plaintiff pursuant to 15 U.S.C. §1640(a)(1), statutory damages of up to $4,000 pursuant to 15 U.S.C. §1640(a)(2)(A)(iv), and the costs of this action together with a reasonable attorney's fee as determined by the court, pursuant to 15 U.S.C. §1640(a)(3).

133.   The Plaintiff is otherwise entitled to recoupment of said amounts if the violations of TILA are time barred.

WHEREFORE, Plaintiff demands judgment for damages against SETERUS and the unknown holder in due course for actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1640(a).

## COUNT III
## BREACH OF CONTRACT

134.    Plaintiff reallege all paragraphs as though fully set out here in full.

135.    The Defendant JP MORGAN CHASE BANK, NA breached the contract with Plaintiff and thereby caused Plaintiff incidental and consequential damages (including mental anguish).

136.    Allegedly the Defendant has some contractual right to foreclose on the Plaintiff.

137.    Plaintiff claims all damages allowable under law.

138.    The written contract requires valid notices of assignments, valid notices of "hello" and "goodbye" letters, valid notices of default at the stipulated dates required by the contract and clear and conspicuous notification needed to cure the default, a valid notice of acceleration clearly spelling out the requirements to cure the notice of acceleration, and an accurate accounting of all amounts owed for judgment.

139.    The actions of the Defendant JP MORGAN CHASE BANK, NA is clearly in violation of the agreement and is/was unfair and unreasonable.

140.    Defendant JP MORGAN CHASE BANK, NA has failed to perform all conditions, covenants, and promises required to be performed in accordance with the terms and conditions of the contract.

141.    By virtue of the foreclosure and subsequent judgment, the defendant(s) breached the said agreement.

142.    By reason of defendant(s) breach of said contract as herein alleged, the plaintiff has suffered damages to be determined at trial.

WHEREFORE, plaintiff prays for judgment against defendant JP MORGAN

CHASE BANK, NA for the breach of the terms of said written agreement, the Plaintiff is

entitled to recover reasonable attorney fees incurred in the enforcement of the provisions

of the agreement; for compensatory damages; for punitive damages to discourage the

Defendant(s) from continuing to engage in the same manner in the future, for reasonable

attorney fees according to proof; for costs of suit herein incurred; intentional infliction of

emotional distress; and for such other and further relief as the court may deem proper.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

143.    Plaintiff repeats and realleges all the factual allegations as if fully set forth here.

144.    In alternative, the Plaintiff has/had an ongoing contractual relationship with the

originator of the mortgage which does not include the Defendants SHAPIRO, FISHMAN

& GACHE', LLP, P.A., FNMA and SETERUS.

145.    The Plaintiff avers that a party other than FNMA and SETERUS was the holder in

due course at the inception of the subject case.

146.    The Defendants SHAPIRO, FISHMAN & GACHE', LLP, P.A., FNMA and

SETERUS have no contract with the Plaintiff, are not in privity with the Plaintiff and

have failed to prove why the Plaintiff owes them any money.

147.    The original mortgagee JP MORGAN CHASE BANK, NA and subsequent

assignees have failed to maintain reasonable financial records as to whom and when they

sold the note and mortgage one or more times without notice to the Plaintiff.

148.    The Defendants SHAPIRO, FISHMAN & GACHE', LLP, P.A., FNMA and SETERUS at all material times, were aware of the existence of these contracts and/or ongoing contractual relationship.

149.    Upon information and belief, Defendants SHAPIRO, FISHMAN & GACHE', LLP, P.A., FNMA and SETERUS have intentionally interfered with Plaintiff's contractual and ongoing relationship by wrongful means, namely directing to them false, unfair, deceptive, misrepresentation and otherwise unconscionable means to extract money from the Plaintiff and take his property without lawful authority to do so.

150.    Defendants engaged in the foregoing conduct intentionally, maliciously, wrongfully, and without justification. Upon information and belief, Defendants committed these wrongful acts for the sole purpose of harming the Plaintiff and taking Plaintiff's property.

151.    Such conduct constitutes wrongful and tortuous interference by Defendants SHAPIRO, FISHMAN & GACHE', LLP, P.A., FNMA and SETERUS with the rights of the Plaintiff.

152.    Defendant's SHAPIRO, FISHMAN & GACHE', LLP, P.A., FNMA and SETERUS intentional interference with Plaintiff's existing contractual and ongoing relationship are causing, and threaten to continue to cause, serious and irreparable harm to Plaintiff, including harm to Plaintiff's reputation, credibility and through deception, omissions and misrepresentations have caused the Plaintiff to waive an defenses to the deceptive acts of the Defendant.

153.    In addition, because the actions of the Defendants were undertaken with actual malice and despite knowledge of a high probability that injury or damage would result; Plaintiff is entitled to punitive damages.

154.    The acts of the Defendants' SHAPIRO, FISHMAN & GACHE', LLP, P.A., FNMA and SETERUS were unjustified and unconscionable.

WHEREFORE, Plaintiff requests judgment against each defendants SHAPIRO, FISHMAN & GACHE', LLP, P.A., FNMA and SETERUS; awarding Plaintiff compensatory damages from all Defendant intentional interference with Plaintiff's ongoing contractual relationship; awarding Plaintiff punitive damages from Defendant in an amount to be determined at trial for the intentional and malicious conduct of defendant; awarding Plaintiff the costs and disbursements of this action; and awarding Plaintiff such other and further relief as may be deemed just and proper by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated:    June 23, 2014          , 2014.

Respectfully Submitted By,

MARITZA PREBAL
35 S.W. 10 STREET
HALLANDALE, FL 33005

# EXHIBIT A

# NOTE

April 11, 2007                    Pembroke Pines                          FL
                [Date]                              [City]                                    [State]

108 Virginia Rd
West Park, FL  33023
                                          [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 125,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
JPMorgan Chase Bank, N.A.
a bank which is organized and existing under the laws of the United States of America
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of  6.875                %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First          day of each month beginning on June 1st  2007               . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on May 1, 2037              , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at  JPMorgan Chase Bank, N.A.,  c/o Chase Home Finance, LLC
3415 Vision Drive, Columbus, OH  43219                       or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 821.17

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

1742658575

**FLORIDA FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5N(FL) (0005)          Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                 Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen**     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000**         % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)     _____ (Seal)
                              -Borrower     **Maritza Prebal**              -Borrower

_____ (Seal)     _____ (Seal)
                              -Borrower                                     -Borrower

_____ (Seal)     _____ (Seal)
                              -Borrower                                     -Borrower

_____ (Seal)     _____ (Seal)
                              -Borrower                                     -Borrower

*[Sign Original Only]*

1742658575


-6N(FL) (0006)                    Page 3 of 3                    Form 3210 1/01

## Allonge

**Borrower(s):**   PREBAL MARITZA
                   108 VIRGINIA RD
                   WEST PARK, FL 33023

**Loan Amount:**   $125,000.00
**Loan #:**        1742658575
**Note Date:**     4/11/2007

**PAY TO THE ORDER OF:**

Chase Home Finance, LLC

**without recourse this 5/21/2007**

JP Morgan Chase Bank, N.A.

an Ohio Corporation

*Renee Foster*

Renee Foster

Assistant Secretary

## Allonge

**Borrower(s):**   PREBAL MARITZA
                   108 VIRGINIA RD
                   WEST PARK, FL 33023

**Loan Amount:**   $125,000.00
**Loan #:**        1742658575
**Note Date:**     4/11/2007

**PAY TO THE ORDER OF:**

**without recourse this 5/21/2007**

Chase Home Finance, LLC

a Delaware Corporation

*Susan V Burroughs*

Susan V Burroughs

Assistant Secretary

ASSIGNMENT OF MORTGAGE

# EXHIBIT B

Return To:
JPMorgan Chase Custody Services
P.O. Box 8000
Monroe, LA  71211

This document was prepared by:

———————————[Space Above This Line For Recording Data]———————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 11, 2007
together with all Riders to this document.
(B) "Borrower" is
Maritza Prebal an unmarried woman  AND MARITZA MAZAR, an unmarried Woman

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is
JPMorgan Chase Bank, N.A.
Lender is a  national banking association
organized and existing under the laws of the United States of America

1742658575

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3010  1/01

-6(FL) (0005).01
Page 1 of 18          Initials:

VMP MORTGAGE FORMS - (800)521-7291

⟨17⟩

Lender's address is
1111 Polaris Parkway, Columbus, OH  43240
Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated April 11, 2007
The Note states that Borrower owes Lender
One hundred twenty-five thousand and 00/100                                    Dollars
(U.S. $   125,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than May 1, 2037
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6(FL) (0006).01                          Page 2 of 16                    Initials:              Form 3010   1/01

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the COUNTY                    [Type of Recording Jurisdiction]
of  BROWARD                                                                    [Name of Recording Jurisdiction]:

See attached Schedule A

Parcel ID Number: 111250812300                              which currently has the address of
108 Virginia Rd                                                                                    [Street]
West Park                                                       [City], Florida  33023          [Zip Code]
("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

1742658575

-6(FL) (0005).01                          Page 3 of 16          Initials: ___          Form 3010   1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

-6(FL) (0005).01                    Page 4 of 16                    Initials: _____    Form 3010   1/01

CFN # 107033266, OR BK 43973 PG 1666, Page 5 of 67

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

Initials

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Initials: _____

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

1742658575

-6(FL) (0005).01                          Page 7 of 16                      Initials: _____   Form 3010   1/01

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: ___

-6(FL) (0005).01        Page 8 of 16        Form 3010   1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

1742658575

-6(FL) (0005).01                              Page 9 of 16                    Initials: _____    Form 3010  1/01

CFN # 107533266, OR BK 43573 PG 1673, Page 10 of 17

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

-6(FL) (0005).01          Page 10 of 16          Initials:          Form 3010 1/01

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

1742658575

-6(FL) (0005).01                    Page 11 of 16              Initials: ___   M M   Form 3010   1/01

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

Initials: _____

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

1742658575

-6(FL) (0005).01                          Page 13 of 16                          Form 3010  1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Initials: _____ _____

-6(FL) (0005).01                    Page 14 of 16                    Form 3010  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Elizabeth 2_____
E1·Zabeth Torres

_Maritza Fnbal_____ (Seal)
Maritza Fnbal                  -Borrower

_____ (Address)

_Russell Benford_____

_Marita Wgas_____ (Seal)
MARITZA MAZAR                  -Borrower

_____ (Address)

_____ (Seal)        _____ (Seal)
-Borrower                          -Borrower

_____ (Address)       _____ (Address)

_____ (Seal)        _____ (Seal)
-Borrower                          -Borrower

_____ (Address)       _____ (Address)

_____ (Seal)        _____ (Seal)
-Borrower                          -Borrower

_____ (Address)       _____ (Address)

1742658575

-6(FL) (0005).01                    Page 16 of 16                    Form 3010   1/01

STATE OF FLORIDA, **BROWARD** County ss:
The foregoing instrument was acknowledged before me this 11th Day of April, 2007 by

Maritza Prebel **and Maritza Mazar**

who is personally known to me or who has produced **FL Driver's License** as identification.
**and FL Resident  Residentiation card**

_____
Notary Public

ELIZABETH TORRES
Notary Public - State of Florida
My Commission Expires Nov 14, 2009
Commission # DD 490745
Bonded By National Notary Assn.

-6(FL) (0005).01                    Page 16 of 16                    Initials: _____  M M        Form 3010  1/01

## EXHIBIT "A"

Lot 5 Block 36 of MIAMI GARDENS ESTATES SECTION FIVE, according to the Plat thereof, as recorded in Plat Book 30 Page 5 of the Public Records of Broward County, Florida.

# EXHIBIT C

Date _3-24 -2014_

MARITZA PREBAL
35 S.W. 10 STREET
HALLANDALE, FL 33005

RE:

JP MORGAN CHASE BANK, N/A/
C/O CHASE HOME FINANCE, LLC
3415 VISION DRIVE
COLUMBUS, OHIO 43219

FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA)
3900 WISCONSIN AVE NW
WASHINGTON, DC 20016

SETERUS
14523 SW MILIKAN WAY, SUITE 200
BEAVERTON, OREGON 97005

SHAPIRO, FISHMAN & GASHE, LLP
2424 NORTH FEDERAL HIGHWAY, STE 360
BOCA RATON, FLORIDA 333431

## NOTICE TO CEASE AND DESIST
## COLLECTION ACTIVITY

Attn:

This letter serves as the formal notice of my demand for you to cease and desist all collection
activity against me.  You are currently in violation of state and federal law.

Please cease and desist all collection actions against me immediately.


Your prompt attention is appreciated,

# EXHIBIT D

## NOTICE OF REQUEST FOR VERIFICATION AND VALIDATION OF DEBT
## UNDER THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

MARITZA PREBAL
35 S.W. 10 STREET
HALLANDALE, FL 33005

RE:

JP MORGAN CHASE BANK, N/A/
C/O CHASE HOME FINANCE, LLC
3415 VISION DRIVE
COLUMBUS, OHIO 43219

FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA)
3900 WISCONSIN AVE NW
WASHINGTON, DC 20016

SETERUS
14523 SW MILIKAN WAY, SUITE 200
BEAVERTON, OREGON 97005

SHAPIRO, FISHMAN & GASHE, LLP
2424 NORTH FEDERAL HIGHWAY, STE 360
BOCA RATON, FLORIDA 333431

This is a request for validation and verification of the debt in the above mentioned

case. I respectfully request that you validate and verify the alleged claim.   I request that

you "Cease and Desist" any collection activities until there is a complete this demand

strict proof thereof.

I respectfully request that you provide me/us with the following information:

1. A complete payment history which lists the dates and amounts of all the payments
   we have made on the loan to date, and shows how each payment was applied or
   credited (whether to principal, interest, escrow, suspense, or some other
   treatment);

2. A breakdown of the amount of claimed arrears or delinquencies on our account,
   including an itemization of all fees and charges you claim are currently due;

3. An explanation of how the amount due to you and your client based on the Monthly Billing Statement dated was calculated and an explanation of why this amount was increased to the amount requested by you in the most recent Statement for foreclosure;

4. The payment dates, purpose of payment, and recipient of any and all foreclosure fees and costs that have been charged to our account;

5. The payment dates, purpose of payment, and recipient of all escrow items charged to our account since inception;

6. A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase within the last 24 months;

7. Pease provide the name, address and telephone number of the "lender" as defined in the mortgage.

8. A copy of any annual escrow statements, and notices of a shortage, deficiency, or surplus, sent to us within the last three (3) years; and

9. The current balance in any suspense account as of the inception and the reason why such funds were deposited in the account.

10. Please provide a copy of the notice of acceleration with proof of how it was sent to me.

11. Please provide a copy of the notice of default and proof of how it was sent to me.

12. Please provide a copy of the assignment of mortgage and proof of when and how it was previously sent to me.

13. Please provide the complete name and address of the entity that currently owns the Note that is secured by this mortgage loan.

14. Please provide a copy of the front and back of all pages of that Note.

15. Please provide copies of all Endorsements of that Note.

16. Please provide a copy of all Allonges to that Note.

17. Please provide a copy of all Assignments of the Deed of Trust/Mortgage securing this Note.

SIGNED

3. An explanation of how the amount due to you and your client based on the Monthly Billing Statement dated was calculated and an explanation of why this amount was increased to the amount requested by you in the most recent Statement for foreclosure;

4. The payment dates, purpose of payment, and recipient of any and all foreclosure fees and costs that have been charged to our account;

5. The payment dates, purpose of payment, and recipient of all escrow items charged to our account since inception;

6. A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase within the last 24 months;

7. Pease provide the name, address and telephone number of the "lender" as defined in the mortgage.

8. A copy of any annual escrow statements, and notices of a shortage, deficiency, or surplus, sent to us within the last three (3) years; and

9. The current balance in any suspense account as of the inception and the reason why such funds were deposited in the account.

10. Please provide a copy of the notice of acceleration with proof of how it was sent to me.

11. Please provide a copy of the notice of default and proof of how it was sent to me.

12. Please provide a copy of the assignment of mortgage and proof of when and how it was previously sent to me.

13. Please provide the complete name and address of the entity that currently owns the Note that is secured by this mortgage loan.

14. Please provide a copy of the front and back of all pages of that Note.

15. Please provide copies of all Endorsements of that Note.

16. Please provide a copy of all Allonges to that Note.

17. Please provide a copy of all Assignments of the Deed of Trust/Mortgage securing this Note.

SIGNED _____

3. An explanation of how the amount due to you and your client based on the Monthly Billing Statement dated was calculated and an explanation of why this amount was increased to the amount requested by you in the most recent Statement for foreclosure;

4. The payment dates, purpose of payment, and recipient of any and all foreclosure fees and costs that have been charged to our account;

5. The payment dates, purpose of payment, and recipient of all escrow items charged to our account since inception;

6. A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase within the last 24 months;

7. Pease provide the name, address and telephone number of the "lender" as defined in the mortgage.

8. A copy of any annual escrow statements, and notices of a shortage, deficiency, or surplus, sent to us within the last three (3) years; and

9. The current balance in any suspense account as of the inception and the reason why such funds were deposited in the account.

10. Please provide a copy of the notice of acceleration with proof of how it was sent to me.

11. Please provide a copy of the notice of default and proof of how it was sent to me.

12. Please provide a copy of the assignment of mortgage and proof of when and how it was previously sent to me.

13. Please provide the complete name and address of the entity that currently owns the Note that is secured by this mortgage loan.

14. Please provide a copy of the front and back of all pages of that Note.

15. Please provide copies of all Endorsements of that Note.

16. Please provide a copy of all Allonges to that Note.

17. Please provide a copy of all Assignments of the Deed of Trust/Mortgage securing this Note.

SIGNED

# EXHIBIT E

Date _____3-24-2014_____

MARITZA PREBAL
35 S.W. 10 STREET
HALLANDALE, FL 33005

RE:

JP MORGAN CHASE BANK, N/A/
C/O CHASE HOME FINANCE, LLC
3415 VISION DRIVE
COLUMBUS, OHIO 43219

FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA)
3900 WISCONSIN AVE NW
WASHINGTON, DC 20016

SETERUS
14523 SW MILIKAN WAY, SUITE 200
BEAVERTON, OREGON 97005

SHAPIRO, FISHMAN & GASHE, LLP
2424 NORTH FEDERAL HIGHWAY, STE 360
BOCA RATON, FLORIDA 333431

## NOTICE of DISPUTE

The homeowner (the "Consumer"), pursuant to 15 USC.§ 1692g(b), give notice that:

1. The debt, or a portion thereof, is disputed.

2. The Consumer requests verification of the debt.

3. The Consumer requests the name and address of the original creditor.

4. The Consumer requests validation of the debt, to wit, the chain of title to the debt and a history of charges and payments thereon.


Respectfully submitted,

_____

# EXHIBIT F

Date 3-24-2014

MARITZA PREBAL
35 S.W. 10 STREET
HALLANDALE, FL 33005

RE:

SETERUS
14523 SW MILIKAN WAY, SUITE 200
BEAVERTON, OREGON 97005

Attn:

Dear Sir or Madam:

YOUR company seems to be the servicer of our mortgage loan at the above address. We dispute the amount that you claim is owed according to the Monthly Billing Statement and request that you send us information about the fees, costs, and escrow accounting on our loan. This is a "qualified written request" pursuant to the Real Estate Settlement and Procedures Act (section 2605(e)) and the Wall Street Reform Act of 2009.

Specifically, we are requesting the following information:

1. A complete payment history which lists the dates and amounts of all the payments we have made on the loan to date, and shows how each payment was applied or credited (whether to principal, interest, escrow, suspense, or some other treatment);

2. A breakdown of the amount of claimed arrears or delinquencies on our account, including an itemization of all fees and charges you claim are currently due;

3. An explanation of how the amount due on the Monthly Billing Statement dated was calculated;

4. The payment dates, purpose of payment, and recipient of any and all foreclosure fees and costs that have been charged to our account;

5. The payment dates, purpose of payment, and recipient of all escrow items charged to our account since inception;

6. A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase within the last 24 months;

7. A copy of any annual escrow statements, and notices of a shortage, deficiency, or surplus, sent to us within the last three (3) years; and

8. The current balance in any suspense account as of the most recent billing statement and the reason why such funds were deposited in the account.

9. Please provide a copy of the notice of acceleration with proof of how it was sent to me.

10. Please provide a copy of the notice of default and proof of how it was sent to me.

11. Please provide a copy of the assignment of mortgage and proof of when and how it was previously sent to me.

12. Please provide the complete name and address of the entity that currently owns the Note that is secured by this mortgage loan.

13. Please provide a copy of the front and back of all pages of that Note.

14. Please provide copies of all Endorsements of that Note.

15. Please provide a copy of all Allonges to that Note.

16. Please provide a copy of all Assignments of the Deed of Trust/Mortgage securing this Note.

## NOTICE AND DEMAND REQUESTING
## STATEMENT OF PAYOFF

You are hereby required by law to show an accounting for all fees authorized under Real Estate Settlement Procedures Act (RESPA) within the timelines of Chapter 2 of the Truth in Lending Act (15 U.S.C. 1631 et seq. Section 1464. 129G).

This is a request for you to please provide us with a complete and itemized payoff statement for our account. We are also requesting you to provide us with an explanation of and documentation of any late fees, legal fees, or any other fees and charges that have been or may be included in the payoff.

This is also a request for a full accounting of the amounts alleged owed, request for payoff and settlement consistent with Generally Accepted Accounting Principles (GAAP) and Generally Accepted Auditing Standards (GAAS) to whit:

12 USC § 1831n(2)(A): Requires banks to follow "Uniform accounting principles consistent with GAAP"

I have not received all of the escrow statements and request all yearly statements as of the inception of this loan.

I therefore demand that you correct these charges and send me point for point why the charges are so.

Effective October 1, 2009 for all loans secured by borrower's principal dwelling are subject to:

> "Prompt" response to payoff requests
> Section 1464. Truth in Lending Act Amendments
> (b) Requests for Payoff Amounts- Chapter 2 of the Truth in Lending Act (15 U.S.C. 1631 et seq.), as amended by this title, is amended by inserting after section 129F (as added by subsection (a)) the following new section:
>
> Sec. 129G. Requests for payoff amounts of home loan
> `A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.'.

This is to request a payoff for the above referenced account itemized with all fees, payments, charges debits and credits including legal fees, BPO and other charges from the inception of the loan to today.

Thank you for your assistance in this matter. If you should have any questions, please feel free to forward all correspondence to above address. Thank you for taking the time to acknowledge and answer this request as required by the Real Estate Settlement and Procedures Act (section 2605(e)) and The Wall Street Reform Act 2009.

Very truly yours,

_____

Sincerely

# EXHIBIT G





**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| BOOK RATE | $14.00 |
| | $0.70 |
| Postage $ | |
| Certified Fee | $3.30 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees $ | $4.00 |

Sent To Shapiro Fishman & Gache LLP
Street, Apt. No.; or PO Box No. 2424 North Federal Hwy
City, State, ZIP+4 Boca Raton, FL 33431

7014 0510 0000 7236 4646

PS Form 3800, August 2006          See Reverse for Instructions



U.S. Postal Service™
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ $0.79 |
| Certified Fee | $3.30 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $4.00 |

Postmark Here
CORAL SPRINGS BRANCH FL USPS
APR 22 2014

Sent To  Federal National Mortgage Ass./CT Corporation
Street, Apt. No.; or PO Box No.  1200 South Pine Island rd 345th
City, State, ZIP+4  Plantation FL 33324

7014 0510 0000 7236 4578

PS Form 3800, August 2006            See Reverse for Instructions



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.70 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $4.00 |

Sent To: JPMorgan Chase Bank
C/O Chase Home Finance, LLC

Street, Apt. No.; or PO Box No. 3415 Vision Dr

City, State, ZIP+4 Columbus, Ohio 43219

PS Form 3800, August 2006          See Reverse for Instructions

7014 0510 0000 7236 4622